in Re Mongiello. That will be done via Zoom. So Mr. Mongiello, am I pronouncing your name right? Yes, Your Honor. Thank you so much. I'm on a roll. I'm pretty good at Italian names apparently. Okay, so Mr. Mongiello, you're the only party that is appearing today. Your adversary is not going to be here, so you have five minutes and no rebuttal because you have nothing to rebut. So it's just the floor is yours for five minutes. You may proceed. Thank you, Your Honors, so much for seeing me. Your Honors, the bankruptcy court dismissed this case on the theory that the bankruptcy was futile and the property was inevitably lost. But hindsight has proven the exact opposite. If the bankruptcy had remained open, the debtor would have prevailed in the two adversary proceedings that were already pending. One of these actions was already a default judgment stage against IndyMac. I'm sure this court is aware of IndyMac. The other had unopposed sudden re-judgment motion pending against HSBC. On the very day, the bankruptcy was dismissed. Those proceedings were designed to resolve the exact issue that ultimately destroyed every attempt to sale of the property at hand. HSBC and IndyMac could not prove ownership of the mortgages they were attempting to enforce. After the dismissal, the title company finally uncovered the real problem that HSBC had recorded a so-called corrective assignment, assigning the second mortgage to itself through a facially defective and fraudulent assignment chain tied to the Wendy-Traxler robo-signing scheme. Yet, HSBC never filed a bankruptcy claim for the second mortgage, never attended demand for that mortgage, and could not produce the original wet ink, note, and mortgage when demanded by the title company. ShellPoint, acting for IndyMac, simultaneously sent a letter admitting the statute of limitations had expired, that the debt was unenforceable unless payment restarted the clock. The title company concluded the title was uninsurable because nobody could establish who actually owned the second mortgage. That is why the sales failed, not because of the debtor, not because the bankruptcy was frivolous. The bankruptcy was a mechanism that would resolve the title defects through the pending adversary proceedings and allow the property to close free and clear. Instead, because the bankruptcy was dismissed, the debtor lost the benefit of those pending actions and incurred over $140,000 in additional legal fees, became subject to contempt proceedings tied to a failed sale that could never legally close, and ultimately lost the property to foreclosure by his father, who held a valid third mortgage after advancing funds to pay attorney fees caused by this litigation. Meanwhile, HSBC itself later filed a voluntary dismissal, another foreclosure action after the statute of limitations had already expired. That is now the second foreclosure dismissal. This is presently a pending federal motion seeking a permanent bar against any third foreclosure attempt. The question before this court is not whether the bankruptcy was futile. The question is whether dismissing it destroyed the very proceedings that would have cured the title, enabled the sale, paid creditors, and prevented catastrophic damage to the debtor. The record now has proved that it did. I'd like to also add something. I know that I'm a pro se litigant and may therefore not receive the same consideration as someone represented by counsel, but I have lived in this nightmare for years and spent almost $200,000 on lawyers who have successively failed me. You can see that if this court did not close my adversary proceedings that were essentially at the finish line, one at a default and the other as an unopposed motion for summary judgment, years of litigation and hundreds of thousands in legal fees and costs and money damages could have been avoided all to get back to the same legal position. A default pending and a motion for a permanent bar of any further attempts to foreclose. And now I have to sue for dequits or relief to remove the slanders on my title and let me and my dad sell or rent the property free of HSBC, PHH, Shell Point, and the defunct Indian Act. Thank you, Your Honors. All right. Thank you, Mr. Mangiello. I thought you timed that just perfectly with like 15 seconds to spare. I don't think we have any questions. We've got your papers. We also have your adversary's papers. So we will reserve decisions as we have for the other arguments today. With respect to your comments about being a pro se litigant, I mean, I think this court has always prided itself on allowing pro se litigants to be heard and to argue. And so that's why you're here today. And not every circuit does it this way. A lot of circuits, the oral argument calendar is really reserved for only a small percentage of the cases. We've generally taken a very broad view as to when we have arguments. And if people want it, we typically give it to them. So anyway, we certainly heard you today and we've read your papers. So we'll be issuing something, I'm sure, shortly, but we will reserve for the day.